```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF LOUISIANA
```

BOLLINGER MARINE FABRICATORS, LLC              CIVIL ACTION
AND BOLLINGER SHIPYARDS LOCKPORT LLC

VERSUS                                         NO: 14-1743

MARINE TRAVELIFT, INC.                         SECTION: R(2)

## ORDER AND REASONS

This dispute concerns a contractual indemnity claim made by plaintiffs Bollinger Marine Fabricators, L.L.C. and Bollinger Shipyards Lockport, LLC (collectively, "Bollinger") against defendant Marine Travelift, Inc. Bollinger seeks indemnification for costs, expenses, and attorneys' fees in connection with defending against the underlying suit. Marine Travelift contends that Bollinger is not entitled to indemnity. The parties have filed cross motions for summary judgment.[1] Because no genuine issues of material fact exist as to Bollinger's claim against Marine Travelift and Bollinger is entitled to judgment as a matter of law, the Court grants Bollinger's motion and denies Marine Travelift's motion.

---

[1] R. Doc. 20 (Bollinger); R. Doc. 25 (Marine Travelift).

**I. BACKGROUND**

This contractual indemnity dispute arises out of a personal injury lawsuit brought by Inosencio Paz in the United States District Court for the Southern District of Texas.[2]

**A. The Indemnity Provision**

In 2005, Bollinger agreed to build a barge, the "MONTVILLE," for Moran Towing Company.[3] The specifications for the barge required a hatch cover crane.[4] Under Purchase Order BMF 224357, Bollinger purchased a HTC600D hatch crane from Marine Travelift to install on the barge.[5] Purchase Order BMF 224357 states that it is "governed by the Purchaser Order Terms and Conditions, rev. 7/10/01, (available at www.bollingershipyards.com or upon written request directed to Material Control, P.O. Box 250, Lockport, LA 70374) . . . ."[6]

The Purchaser Order Terms and Conditions states that "***Any purchase order issued by any Bollinger company shall include and be subject to the following conditions:***"[7]

---

[2] *Inconcio Paz v. Moran Towing Corp., et al.*, Civil Action No. 2:13-CV-237 c/w Civil Action No. 2:13-CV-313 (S.D. Tex.).

[3] R. Docs. 20-11 & 27-1.

[4] *Id.*

[5] *Id.*

[6] R. Doc. 20, Ex. 1 at 2.

[7] R. Doc. 20, Ex. 5.

2

**12. INDEMNIFICATION –** Seller shall indemnify and hold Buyer harmless against all liabilities, losses, damages and expenses, including reasonable attorney's fees, for personal injuries, death or property damage incident to, arising out of, [*sic*] resulting from the activities of Seller, its employees and agents, or its subcontractors and their agents and employees, or in connection with the work to be performed, services to be rendered, or materials to be furnished, under any Purchase Order, except in those instances where such liability, losses, damages or expenses are caused solely and directly by Buyer's negligence. Seller shall Indemnify and hold Buyer harmless from and against any claim, demand, action, proceeding, or expenses, including reasonable attorney's fees, brought or instituted against Buyer by a third party in connection with any alleged loss or damage resulting from, arising out of or in connection with any alleged loss or damage resulting from, arising out of or in connection with any alleged patent infringement, copyright infringement, trade secret violation, or other asserted right to or in any goods purchased by Buyer from Seller under this P/O.[8]

After Bollinger's purchase and receipt of the crane, Moran Towing, at the recommendation of Bollinger, chose to upgrade the standard audible alarm horn and warning lights installed on the crane.[9] Marine Travelift sold the upgraded components directly to Moran Towing and billed Moran Towing for the equipment directly.[10] The parties dispute whether the alarm horn and warning lights were subject to the Purchase Order Terms and Conditions.

---

[8]   *Id.*

[9]   R. Doc. 27, Ex. 8.

[10]  R. Doc. 27, Ex. 7.

### B. The Underlying Suit

In February 2013, Inosencio Paz, an employee of Moran Towing, was injured by the crane while working as a member of the United States Maritime Service cleaning crew aboard the MONTVILLE. Paz was injured when an employee of Moran, who was operating the hatch cover crane, caused the crane to move forward and strike Paz as he stood on the crane's dedicated track. Paz sued the barge owner, Moran Towing, claiming the accident resulted solely from a Moran Towing employee's negligent operation of the crane, particularly the failure to use a required signalmen or spotter to ensure the safe movement of the crane, which caused Paz to be struck by the crane.[11] At the time, Paz made no claim against either Marine Travelift, the crane manufacturer, or Bollinger, the barge manufacturer.

Moran Towing filed a third-party complaint against Bollinger and Marine Travelift claiming a right of contribution for any amounts it may be required to pay in connection with Paz's claims "as a result of any allegations related to the crane, warning lights and/or audible alarm."[12] Moran later filed an amended third

---

[11]   R. Doc. 27, Ex. 1.

[12]   R. Doc. 27, Ex. 2 at 3; see also id. at 4 ("In the unlikely event Plaintiff's allegations are proven, Defendant/Third-Party Plaintiff, Moran Towing Corporation, would show that the incident made the basis of this suit was proximately caused in whole or in part by the negligence of Marine Travelift, Inc., Bollinger Marine Fabricators, L.L.C., and Bollinger Shipyards Lockport, L.L.C. in the manufacturing,

party complaint where it reiterated this allegation.[13]  Paz then filed a first amended complaint against Moran Towing, Bollinger, and Marine Travelift, asserting the same allegations as did Moran Towing against Bollinger and Marine Travelift related to the crane, warning lights, and/or audible alarm.[14]  Specifically, Paz alleged negligence by Bollinger and Marine Travelift "in the manufacturing, design, marketing and subsequent handling, inspection and/or servicing of the of the [*sic*] crane and its warning light and audible alarm;" "breach of contract including breach of implied warranties for the crane, warning light and audible alarm;" "breach of the warranty of workmanlike performance for the crane, warning light and audible alarm;" and strict liability "for placing the crane, warning light and audible alarm . . . into the stream of commerce."[15]  Paz also alleged negligence

---

design, marketing and subsequent handling, inspection, and/or servicing of the of the [*sic*] crane and its warning light and audible alarm.").

[13]   R. Doc. 25, Ex. 4 (Bollinger and Marine Travelift "failed to exercise reasonable care when designing, selecting, manufacturing, installing and testing the crane's warning lights and horns;" Bollinger and Marine Travelift "are liable for their breach of implied warranties related to the design, manufacture, installation and fabrication of the crane, warning light and audible alarm system and for the consequential and incidental damages (to the extent that the Plaintiffs are entitled to recover damages);" Bollinger and Marine Travelift "are strictly liable for placing the crane with its warning light and audible alarm system into the stream of commerce . . . .").

[14]   R. Doc. 25, Ex. 5.

[15]   *Id.*

based on the absence of a "placard with general operating instructions" affixed to the crane.[16] Paz re-alleged these claims in his second amended complaint.[17]

On February 21, 2014, Bollinger filed a counterclaim against Moran Towing seeking indemnity based upon the Vessel Construction Agreement that existed between Moran and Bollinger. In a letter dated May 7, 2014, Bollinger sought defense and indemnity from Marine Travelift on the basis of the Purchase Order Terms and Conditions.[18] Marine Travelift never provided defense nor indemnity based on this request. On June 16, 2014, while the *Paz* litigation was still pending, Bollinger filed this indemnity action against Marine Travelift in the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana.[19] Marine Travelift timely removed the matter to this Court on July 31, 2014.[20]

On October 20, 2014, the United States District Court for the Southern District of Texas granted a Joint Motion to Dismiss filed by Moran Towing and Bollinger requesting that all claims asserted by or against such parties be dismissed with prejudice.[21] On the

---

[16]   *Id.*

[17]   R. Doc. 28, Ex. 3.

[18]   R. Doc. 20, Ex. 3.

[19]   R. Doc. 1.

[20]   *Id.*

[21]   R. Doc. 20, Ex. 4.

same day, the district court entered a Final Judgment dismissing with prejudice all claims by Paz against Bollinger, Moran Towing, and Marine Travelift.[22] The Final Judgment indicated that the parties settled all claims.[23] As a result, there was no trial on the merits in the *Paz* matter, nor any judgment entered against Bollinger requiring that it pay for personal injuries sustained by Paz.

**C. Bollinger's Claim for Contractual Indemnity**

In its complaint, Bollinger alleges that the Purchase Order Terms and Conditions required Marine Travelift to defend, indemnify, and hold harmless Bollinger from and against any and all claims asserted and/or judgments rendered in connection with the *Paz* litigation. Bollinger alleges that it tendered the defense of the lawsuit to Marine Travelift, but Marine Travelift refused to defend, indemnify, and hold harmless Bollinger, which Bollinger contends constitutes a breach of contract.[24] Bollinger seeks recovery of costs, expenses, and attorneys' fees in connection with defending against the *Paz* litigation.

Bollinger asserts that Marine Travelift's contractual duty to defend, indemnify, and hold harmless arose from the indemnity provision in the Purchaser Order Terms and Conditions. Because

---

[22] *Id.*

[23] *Id.*

[24] R. Doc. 1 at 3.

Bollinger incurred expenses, including defense costs and attorneys' fees, in defending against the underlying claim for personal injuries, which, it alleges, are connected to Marine Travelift's services under the Purchase Order Terms and Conditions, it contends that it is entitled to indemnity.

Bollinger now moves for summary judgment on its indemnity claim. Marine Travelift moves for summary judgment against Bollinger contending that it is not entitled to indemnity because (1) the indemnity provision applies only to liabilities, (2) the indemnity provision does not cover claims for personal injuries, and (3) the underlying suit did not arise from Marine Travelift's services rendered under the Purchase Order.

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). The Court must draw all reasonable

inferences in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation marks omitted).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991)(citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.

The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *Id.* at 325. *See also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (citing *Celotex*, 477 U.S. at 332).

**III. DISCUSSION**

The parties agree that Louisiana law governs this case. Under Louisiana law, "[t]he language in an indemnity agreement dictates the obligations of the parties." *Kinsinger v. Taco Tico, Inc.*, 861 So. 2d 669, 671 (La. Ct. App. 5 Cir. 2003) (citing *Meloy v. Conoco, Inc.*, 504 So. 2d 833 (La. 1987)). "[I]ndemnity provisions are construed in accordance with general rules governing contract interpretation. When the terms of a contract are unambiguous and lead to no absurd consequences, [courts] interpret them as a matter of law." *Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.*, 89 F.3d 243, 246 (5th Cir. 1996) (internal citations omitted). In contrast, "ambiguity in the terms of a contract gives rise to a fact question concerning the intent of the parties." *Id.* (citation omitted).

In determining whether an indemnitor is obligated to tender a defense or reimburse the costs of successfully defending an action, the court's inquiry turns "entirely upon the allegations in the precipitating pleadings." *Sullen v. Missouri Pacific R. Co.*, 750 F.2d 428, 433 (5th Cir. 1985) (citing *American Home Assurance Co. v. Czarniecki*, 230 So. 2d 253 (1969); *Young Oil Co. of Louisiana, Inc. v. Durbin*, 412 So. 2d 620 (La. App. 1982); *Sullivan v. Hooker Chemical Co.*, 370 So. 2d 672 (La. App. 1979); *Pearson v. Hartford Accident & Indemnity Co.*, 345 So. 2d 123 (La. App. 1977)). "Louisiana courts look exclusively to the pleadings in light of the contract provisions; the ultimate outcome of the case has no effect upon the duty to defend." *Id.* (citations omitted). *See also Laird v. Shell Oil Co.*, 770 F.2d 508, 511-12 (5th Cir. 1986) (stating the rule that, under Louisiana law, when indemnitee successfully defends the underlying suit, indemnitor would owe defense if the complaint in the underlying suit alleges facts which, if proven, would give rise to coverage under the indemnity agreement); *Wuertz v. Tobias*, 512 So. 2d 1209, 1212 (La. App. 1987) (awarding indemnity for reasonable expenses and attorneys' fees after underlying suit was dismissed).

With these principles in mind, the Court turns to the provision at issue in these motions. Relevant here, the indemnity provision provides that Marine Travelift will indemnify and hold harmless Bollinger for

11

> all liabilities, losses, damages and expenses, including reasonable attorney's fees, for personal injuries . . . incident to, arising out of, [*sic*] resulting from the activities of [Marine Travelift], . . . or in connection with the work to be performed, services rendered or materials to be furnished, under any Purchaser Order, except in those instances where such liability, losses, damages or expenses are caused solely and directly by [Bollinger's] negligence.

By the express terms of the provision, the relevant inquiry is whether Bollinger's attorneys' fees and defense costs incurred in the *Paz* litigation qualify as "liabilities, losses, damages, or expenses," and whether the personal injuries alleged in the *Paz* litigation were "incident to," "arising out of," or "resulting from" the activities of Marine Travelift or were "in connection" with Marine Travelift's provision of work, services, or materials under the Purchase Order.[25]

After a review of the language of the indemnity provision and the pleadings in the underlying lawsuit, the Court finds that there is no genuine issue of material fact and that the indemnification provision unambiguously entitles Bollinger to recover those defense costs and attorneys' fees it incurred in defending against the underlying suit.

As an initial matter, the Court notes that defense costs, such as attorneys' fees, are clearly within the scope of the indemnity provision because it expressly provides for "expenses, including

---

[25] Marine Travelift does not contend that the indemnity provision is inapplicable because any negligence on the part of Bollinger caused the alleged personal injuries.

reasonable attorney's fees."[26]  *See Naquin v. Louisiana Power & Light Co.*, 951 So. 2d 228, 232 (La Ct. App. 1 Cir. 2006) ("The law in Louisiana is well-settled that attorney fees in indemnity contracts are recoverable when specifically provided for by the contract . . . ."); *Dillard v. Shaughnessy, Fickel and Scott Architects, Inc.*, 843 S.W. 2d 711, 720 (Mo. App. 1997) (holding that settlement of claims and defense costs "come[s] within the broad language of [an indemnity agreement] requiring [indemnity] for 'any liability, loss, cost or expenses'").  Notably, the provision does not make recovery of expenses conditional on, for example, a claim being filed or liability being incurred. Instead, such expenses are recoverable "for personal injuries" in general. As a result, Bollinger's defense costs and attorneys' fees are within the scope of the indemnity provision.

In so holding, the Court rejects Marine Travelift's arguments that the indemnity provision applies only to liabilities and that it limits indemnity to claims, demands, actions, or proceedings to losses incurred as a result of certain intellectual property actions. As to Marine Travelift's first argument, Marine Travelift ignores the broad and inclusive language of the indemnity provision, which plainly provides indemnity for not only "liabilities," but also "losses, damages and expenses, including

---

[26]    Marine Travelift does not argue that Bollinger's defense costs do not qualify as "reasonable" attorneys' fees.

reasonable attorney's fees . . . ." Marine Travelift focuses solely on the term "liability," and fails to acknowledge these other terms or even attempt to explain how "losses, damages, and expenses" are restricted to those incurred as a result of "liabilities." Moreover, Marine Travelift's interpretation produces a perverse result. Under Marine Travelift's reading, Bollinger should never defend an action because it would recover indemnity only by being cast in judgment. *See White v. Dietrich Metal Framing*, Civil Action No. 1:06-CV-554, 2007 WL 7050943, at *4 (E.D. Tex. Nov. 29, 2007) (holding that a similar interpretation "would unfairly penalize [the indemnitee] for successfully defending itself against [] claims--an outcome that is contrary to public policy"); *Amoco Oil Co. v. Buckley Heating, Inc.*, 495 N.E.2d 875, 876 (Mass. App. Ct. 1986) (rejecting this interpretation because "[a]dopting [it] would lead to the aberrant consequence that an indemnitee would be better off supinely surrendering to a claim, than intelligently resisting it.").

Marine Travelift also contends that indemnity is barred in this case because the indemnity provision limits indemnity based on claims, demands, actions, or proceedings to losses incurred as a result of certain intellectual property theories. In support, Marine Travelift highlights that while the first sentence of the indemnity provision, which pertains to personal injuries, allows indemnity for "liabilities, losses, damages, and expenses," the

14

second sentence, which pertains to patent infringement, copyright infringement, and trade secret violations, allows indemnity for "any claim, demand, action, proceeding, or expenses." Marine Travelift contends that the second sentence somehow limits the scope of the first sentence. These sentences, however, appear unrelated. The first sentence pertains to indemnity for personal injuries, death, and property damages and the second sentence pertains to certain intellectual property theories. The second sentence does not purport to limit the scenarios in which Bollinger can be indemnified for all claims, but rather delineates the specific instances in which Bollinger can be indemnified for certain intellectual property claims. By Marine Travelift's logic, that the first sentence pertaining to "liabilities" does not include indemnity for the intellectual property claims means that Bollinger is entitled to indemnity only for a "claim, demand, action, proceeding, or expenses" arising from the specific intellectual property claims, but is not entitled to indemnity if liability is imposed. This is a strained reading.[27]

---

[27] The Court also notes that a court in this District, interpreting Bollinger's former Purchase Order Terms and Conditions, which contained only the first sentence related to "liabilities, losses, damages, and expenses," found that it alone would require indemnification for claims. *Chouest Offshore Services v. Superior Energy Services, L.L.C.*, Civil Action No. 04-446, 2007 WL 325357, at *3 (E.D. La. Jan. 21, 2007) (Barbier, J.) (holding that the indemnity provision requires indemnity "regardless of the party asserting the claim as long as (1) the services were rendered pursuant to the purchase order and (2) the loss did not result form Bollinger's sole negligence"). That the

The Court now turns to the inquiry of whether the alleged personal injuries in the underlying suit related to Marine Travelift's services/work, as required by the indemnity provision. The Court finds that they did.

The indemnity provision provides indemnity for costs from personal injuries "incident to," "arising out of," or "resulting from" the activities of Marine Travelift, or "in connection with" the work performed, services rendered or materials furnished by Marine Travelift under the Purchase Order. Louisiana courts have applied a "but for" causation test to indemnity provisions containing "arising out of" language. *Kansas City Southern R. Co. v. Pilgrim's Pride Corp.*, Civil Action No. 06-0003, 2010 WL 1293340, at *6 (W.D. La. Mar. 29, 2010); Perkins *v. Rubicon, Inc.*, 563 So. 2d. 258, 259-60 (La. 1990) (holding that "arising out of" language in an indemnity provision requires "a connexity similar to that required for determining cause-in-fact: Would the particular injury have occurred but for the performance of work under the contract?"). As to "in connection with" language, "Louisiana courts have given 'a broader construction to such phrases . . . .'" *Pilgrim's Pride*, 2010 WL 1293340, at *6 (quoting *Fontenot*, 791 F.2d at 1215 n.6). *See also Poole v. Ocean Drilling & Exploration Co.*, 439 So. 2d 510, 512 (La. App. 1 Cir. 1983) (noting that "in

---

indemnity provision now includes another sentence that expands Bollinger's right to indemnity in other instances does not restrict or modify the scope of the first sentence.

connection with" means "being related to or associated with, but not the primary or only purpose of" (internal quotation and citation omitted)).

In the underlying suit, Paz sought recovery for personal injuries against Bollinger and Marine Travelift for their alleged negligence, breach of contract including breach of implied warranty, breach of the warranty of workmanlike performance, and strict liability related to the crane, warning light, and audible alarm. Paz also alleged negligence based on the absence of a "placard with general operating instructions" affixed to the crane. The parties dispute whether Marine Travelift provided the warning light and audible alarm under the Purchase Order Terms and Conditions, but it is undisputed that Marine Travelift provided the crane subject to the Purchase Order Terms and Conditions, which included the indemnity provision. Because Paz stated a cause of action against Bollinger for personal injuries arising from the crane and the absence of a placard with general operating instructions, and because Paz's alleged personal injuries would not have occurred but for Marine Travelift's provision of the crane, the Court finds that Paz's liability theory against Bollinger falls within the scope of the indemnity provision. Accordingly, the Court grants Bollinger's motion for summary judgment.

**IV. CONCLUSION**

    For the foregoing reasons, the Court GRANTS Bollinger's motion for summary judgment and DENIES Marine Travelift's motion for summary judgment on the issue of liability.

    New Orleans, Louisiana, this 13th day of April, 2015.

    _____Sarah Vance_____
    SARAH S. VANCE

    UNITED STATES DISTRICT JUDGE