UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BOLLINGER MARINE FABRICATORS, LLC AND BOLLINGER SHIPYARDS LOCKPORT, LLC | * * * * | CIVIL ACTION |
| | | NO.:2:14-cv-01743 |
| V. | * * | JUDGE: SARAH S. VANCE |
| MARINE TRAVELIFT, INC. | * * | MAGISTRATE: JOSEPH C. WILKINSON, JR. |

**REPLY TO THE OPPOSITION OF MTI TO BOLLINGER'S MOTION FOR SUMMARY JUDGMENT ON DAMAGES; OR, ALTERNATIVELY, MOTION FOR JUDGMENT ON THE STIPULATED FACTS**

NOW INTO COURT, through undersigned counsel, come plaintiffs, Bollinger Marine Fabricators, L.L.C. and Bollinger Shipyards Lockport, L.L.C. (collectively, "Bollinger"), which reply to the Opposition[1] filed by defendant, Marine Travelift, Inc. ("MTI"), to Bollinger's Motion for Summary Judgment; or, Alternatively, Motion for Judgment on the Stipulated Facts.[2] Ordinarily, leave of court is required to file a Reply Memorandum, but this Court's order on Trial Preparation and Procedures expressly gave Bollinger the right to file a reply to MTI.[3]

**I.   BOLLINGER'S REQUEST FOR DAMAGES IS TIMELY**

In an effort to escape liability for Bollinger's attorneys' fees and costs, MTI spends about half of its brief arguing that this Court erred by finding MTI liable to Bollinger under the indemnity provision of Bollinger's Purchase Order Terms and Conditions because such a request is premature; but, that is not the issue before the Court.  With liability already determined, the sole

---

[1] Rec. Doc. # 48.

[2] Rec. Doc. # 46.

[3] Rec. Doc. # 44.

1

issue is how much Bollinger is entitled to in damages. Bollinger submits the correct number is $230,259.56, because that is how much it incurred in defending against the *Paz v. Moran Towing Corporation* case, heard in the U. S. Southern District Court of Texas, Corpus Christi Division, Civil Action No. 2:13-cv-00237, consolidated with 2:13-cv-00313 ("the *Paz* Litigation"), and in obtaining the defense and indemnity it was owed in that suit from MTI.

In *Suire v. Lafayette City-Parish Consolidated Government*, the Louisiana Supreme Court found that for an indemnity claim to be ripe for payment: the lawsuit against which indemnity is sought must be concluded, and the defense costs in question have to have been paid.[4] Those conditions have both been met in this case. The *Paz* Litigation, from where the indemnity obligation of MTI arose, was fully dismissed with prejudice.[5] Further, the Invoice Listing jointly submitted by the parties as part of their Stipulated Findings of Fact show that Bollinger has paid each invoice as it became due.[6]

The case upon which MTI relies for its prematurity argument, *Morella v. Board of Commissioners of the Port of New Orleans*, followed the same general rule.[7] As to the holding in *Morella*, it is apparent that the facts in that case were distinguishable, which led to the outcome cited by MTI. *Morella* found *Meloy v. Conoco, Inc.*[8] and *Webb v. Shell Offshore, Inc.*[9] significant to its finding of prematurity on a claim for indemnity. However, both *Meloy* and *Webb* were cases

---

[4] 04-1459, p. 17 (La. 04/12/05); 907 So. 2d 37, 51.

[5] Pre-Trial Order, Rec. Doc. # 38, p. 12, Uncontested Fact #22 (referring to Rec. Doc. ## 197 and 198 in the *Paz* Litigation).

[6] Rec. Doc. #45-1, pp. 1-3. This is corroborated by the Affidavit of Robert S. Reich. Rec. Doc. # 46-9, p. 7, ¶ 11.

[7] 2004-0312, p. 8 (La. App. 4 Cir. 10/27/04); 888 So. 2d 321, 325 (citing *Meloy v. Conoco, Inc.*, 504 So. 2d 833 (La. 1987).

[8] 50 So. 2d at 839.

[9] 557 So. 2d 276 (La. App. 4 Cir. 1990).

decided under the Louisiana Oilfield Indemnity Act ("LOIA"), which started the litigants in a position diametrically opposed to Bollinger's position in this case.[10] Under the LOIA, any indemnification for one's own negligence is null and void, <u>unless</u> the indemnitee is found free from fault after a trial on the merits or summary judgment.[11] Yet, in the instant matter, Bollinger is owed indemnity from MTI for all its "expenses, including reasonable attorneys' fees," which are related in any way to the *Paz* Litigation,[12] "<u>except</u> in those instances where such…expenses are caused solely and directly by Buyer's negligence."[13] Thus, in a LOIA case, the indemnitee begins with a voided obligation, <u>unless</u> it can prove otherwise; but, with a contract like Bollinger's, the indemnitee (Bollinger) starts as being indemnified by the indemnitor (MTI) <u>except</u> when there is a showing of Bollinger's fault—of which there has been none.

Even in the *Thibodaux v. Southern Natural Gas Company* case cited by MTI, indemnity was only owed to the "Company" by "Contractor" "<u>provided</u> such [damages] are actually caused by or arise out of negligent acts or omissions of Contractor."[14] Thus, in that case, indemnity was <u>only</u> available if the negligence of the indemnitor was shown. MTI would have this Court rule that the exception to its indemnity obligation—an affirmative defense—automatically shields MTI from the indemnity owed Bollinger, unless Bollinger can prove otherwise: such a ruling would be absurd, and would pervert the applicable contractual provisions. The clear language of the contract

---

[10] *See Meloy*, 504 So. 2d at 836-37; *Webb*, 557 So. 2d at 278.

[11] *Compare* LA. REV. STAT. § 9:2780 *with Ardoin v. Northstar Interests, LLC*, 2008 U.S. Dist. LEXIS 89218, *8 (E.D. La. Nov. 3, 2008) (citing *Lyons v. Pool Co. of Texas*, 2000-0222, pp. 5-7 (La. App. 4 Cir. 12/20/00), 781 So. 2d 569, 573 (discussing a finding of fault after summary judgment); *Meloy*, 504 So. 2d at 839 (discussing a finding of fault after trial).

[12] *See* Rec. Doc. #43, Court's Order and Reasons, p. 3 (quoting the relevant indemnity language).

[13] Rec. Doc. # 46-7, p. 17, § 12 (emphasis added).

[14] 97-1483, p. 2 (La. App. 4 Cir. 01/21/98); 705 So. 2d 1287, 1288 (emphasis added).

provides indemnity to Bollinger unless it is found to be solely at fault—and in two separate litigations, no evidence or testimony has supported the argument that Bollinger had any fault, let alone sole fault.

MTI had chances in both the *Paz* Litigation and the above-captioned matter to litigate Bollinger's fault, but failed in both instances to prove any. As to the *Paz* Litigation, there is no dispute that suit was dismissed with prejudice.[15] Thus, Bollinger's fault cannot be shown through that suit. In this case, the liability phase of trial is over, and Bollinger was granted summary judgment. If MTI had wanted to prove Bollinger was solely at fault, it should have done so at the liability phase of trial, yet it failed to do so. Now, the Court is merely determining how much Bollinger is owed in indemnity.

Even if Bollinger has to prove it was not negligent to obtain indemnity under its Purchase Order Terms and Conditions—which Bollinger denies—the evidence in the record amply supports such a finding on summary judgment. There is no dispute that Bollinger was dismissed with prejudice from the *Paz* Litigation.[16] Nor is there any dispute that Bollinger's dismissal from the *Paz* Litigation was without any payment made by Bollinger for any liabilities, losses, damages, or expenses related to the *Paz* plaintiff's personal injuries, and that Bollinger made no other form of contribution in that case whatsoever.[17] Surely, no party is going to dismiss, with prejudice, any other party that was solely at fault without any compensation. Even if this were not common sense, these facts comport with the finding of the *Thibodaux* case relied upon by MTI: "Since Graham has been dismissed with prejudice by the plaintiff and found to have no responsibility to Columbia

---

[15] Pre-Trial Order, Rec. Doc. # 38, p. 12, Uncontested Fact #22 (referring to Rec. Doc. ## 197 and 198 in the *Paz* Litigation).

[16] *See id.*

[17] Pre-Trial Order, Rec. Doc. # 38, p. 12, Uncontested Fact #23.

4

by the trial judge, it is not negligent."[18]  In *Thibodaux*, there was no trial on the merits and no summary judgment; the case settled and plaintiff moved to dismiss his claims with prejudice.  In that case, however, the indemnity language was only applicable <u>if</u> there was a finding of fault; here, the opposite is true.  Bollinger is entitled to indemnity from MTI, <u>unless</u> MTI can show the accident was the sole fault of Bollinger.  Because MTI has not done so, Bollinger's indemnity claim against MTI is timely, and damages should be awarded by this Court.

### II.  NOTHING IN THE INDEMNITY AGREEMENT DIFFERENTIATES BETWEEN PRE- AND POST-TENDER

This Court has already ruled that Bollinger's Purchase Order Terms and Conditions was a contract under Louisiana law.  As such, it—not the jurisprudence cited by MTI—is the law between the parties.[19]  Significantly, nothing in the indemnity provision at issue would limit MTI's obligations to post-notification of the claim.  MTI is required to indemnify Bollinger "against <u>all</u> liabilities, losses, damages and expenses, including reasonable attorney's fees…."[20]  Thus, there is no basis to limit Bollinger's damages by when MTI was notified of the *Paz* Litigation.

Moreover, each of the four cases cited by MTI in support of this argument are inapposite, because they are all insurance coverage cases, not indemnity cases.  The difference is significant, because as the Louisiana Supreme Court held in *Meloy*:

> Generally, the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. And the insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage.
>
> <u>An indemnity agreement is a specialized form of contract which is distinguishable from a liability insurance policy</u>…an indemnity agreement does not render the indemnitor liable until the indemnitee actually makes payment or sustains loss.[21]

---

[18] *Thiobodaux*, 97-1483 at p. 4; 705 So. 2d at 1289.

[19] LA. CIV. CODE art. 1983; *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459, p. 24 (La. 04/12/05); 907 So. 2d 37, 55.

[20] Rec. Doc. # 46-7, p. 17, § 12 (emphasis added).

[21] 504 So. 2d 833, 838-39 (La. 1987) (emphasis added) (internal citation omitted).

There is no reason for this Court to rule any different than the *Meloy* Court. Bollinger has made a timely indemnity claim; the cases MTI relies upon for its pre-tender argument, *Peavey Company v. M/V ANPA*,[22] *Transcontinental Pipe Line Corporation v. National Union Fire Insurance Company of Pittsburgh, Pa.*,[23] *Rovira v. LaGoDa, Inc.*,[24] and *Gully & Associates, Inc. v. Wausau Insurance Companies*,[25] are all insurance coverage and defense cases that are not relevant to the issue of damages before this Court.

In addition, the insurance policies at issue in the above cases each contained requirements that "prompt" notice of claims be made. Yet, no such notice requirement is contained in Bollinger's Purchase Order Terms and Conditions. Also, *Peavey*, *Transcontinental Pipe*, *Rovira*, and *Gully & Associates* all stand for the proposition that for an insurer to deny defense costs prior to notification of the claim, there must be actual prejudice. Thus, even if these cases were persuasive on an indemnity agreement, as opposed to an insurance contract, they would still indicate that MTI's argument fails because it has not shown any prejudice. MTI was given notice of the *Paz* Litigation sufficiently early to prepare and carry out its defense, which ultimately led to it and Bollinger being dismissed; therefore, there was no prejudice to MTI.

Accordingly, the contract between the parties demands that all Bollinger's expenses be paid by MTI, and there is nothing in the law or jurisprudence that suggests when the request for indemnity was tendered is relevant as to which costs should be paid MTI. To the contrary, the jurisprudence holds that if the case has not been concluded and loss not already incurred, it would

---

[22] 971 F.2d 1168, 1178 (5th Cir.1992).

[23] 378 F.Supp.2d 729, 738–39 (M.D. La. 2005).

[24] 551 So. 2d 790, 796 (La. App. 5 Cir.1989).

[25] 536 So. 2d 816, 818 (La. App. 1 Cir. 1988)

6

be premature to make an indemnity claim.[26]

### III. SETTLEMENT AND DISMISSAL NEGOTIATIONS WERE IRRELEVANT TO THE ONGOING DUTY OF BOLLINGER'S COUNSEL'S TO DEFEND BOLLINGER

MTI's argument that attorneys' fees incurred between negotiations for dismissal of the *Paz* Litigation and that case's final dismissal is absurd, unsupported by law, and contrary to the contractual obligation that MTI owes Bollinger. Prior to a final dismissal, anything could happen in a case, and any proposed settlement could suddenly be withdrawn. Further, considering the Scheduling Order in place in the *Paz* Litigation, Bollinger had to continue working the case from July to October 2014. Any reasonable defense counsel would similarly act to defend the case until an agreement or settlement was in place and the matter finally dismissed.

Specifically, on May 30, 2014, the *Paz* Court entered a Scheduling Order that provided the following deadlines:

- July 1, 2014: plaintiff must send demand letter to defendants;
- July 31, 2014: defendants must respond to plaintiff's demand letter;
- August 1, 2014: end of discovery;
- August 1, 2014: filing of dispositive motions;
- August 1, 2014: designation of experts;
- August 15, 2014: file statement of intent regarding mediation;
- August 20, 2014: status conference with the court;
- October 14, 2014: joint pre-trial order;
- November 7, 2014: final pre-trial conference;
- November 17, 2014: jury selection/trial.[27]

With all these deadlines, it would have been unreasonable for Bollinger's counsel to simply sit back and hope the case settled.

Moreover, the documents on which MTI relies are not as black and white as it would have the Court believe. The offer of Moran Towing's counsel to dismiss Bollinger and MTI was conditioned on Bollinger and MTI dismissing all claims against it, withdrawing outstanding

---

[26] *Suire v. Lafayette City-Parish Consolidated Government*, 04-1459, p. 17 (La. 04/12/05); 907 So. 2d 37, 51

[27] *See* Rec. Doc. # 117 in the *Paz* Litigation, attached hereto for the Court's reference as Exhibit "1."

discovery requests, and withdrawing pending motions.[28] MTI, however, has presented no evidence these terms were accepted; nor explained how even if they were Bollinger could meet those terms without expending more time on the case. Even if Moran Towing had dismissed its allegations against Bollinger and MTI in July 2014 (which it didn't), Bollinger still would have had to defend against the plaintiff's allegations, and so indemnity is still owed for that work, regardless. While Bollinger did, on July 11, 2014, demand that plaintiff dismiss all allegations against Bollinger, plaintiff (and Moran Towing) did not move the Court to actually dismiss Bollinger until September 30, 2014, and those allegations were not actually dismissed until October 20, 2014.[29] Of great relevance to a determination of reasonableness: Bollinger's time expenditures had fallen to almost zero by these later dates.[30]

The invoices stipulated to as admissible and authentic aptly demonstrate that the amount of hours expended by Bollinger's counsel during this time period was reasonable. The time entries for July and August 2014 involved preparing for and participating in motions, discussions with experts, inspecting a vessel, preparing responses to other parties' pleadings, contesting the right to take depositions, the actual taking of multiple depositions, reviewing medical records, reviewing discovery responses of other parties, preparation of a motion for summary judgment, and participating in a status conference with the court.[31] But, by September and October 2014, when it became clear the matter would actually settle, and Bollinger would be dismissed, the time entries dramatically dropped off (to 1.3 and 10.3 hours, respectively).[32]

---

[28] Stipulated Facts, Rec. Doc. # 45-4, p. 11.

[29] *Id.* at pp. 12-16.

[30] *See* Docket in Paz Litigation, attached hereto for this Court's reference as Exhibit "2."

[31] Rec. Doc. # 45-1, pp. 53-72.

[32] *Id.* at pp. 73-78.

8

MTI argues that "Bollinger's counsel can offer no reasonable explanation for continuing to engage in the Texas litigation," but nothing could be further from the truth.[33] How could court hearings and conferences and depositions be held in July and August 2014 with Bollinger not participating? Bollinger's counsel had a duty to represent Bollinger at those events. Similarly, if other parties filed motions or produced discovery responses, those had to be responded to and/or analyzed. Deadlines were fast approaching, and any work that could be done in that case had to be done in a timely fashion. Contrary to MTI's suggestion, it likely would have been malpractice for Bollinger to do nothing while all the other parties continued to conduct discovery and litigate. Nonetheless, the dramatic lessening of time expended in September and October (over a 90% reduction in hours billed) shows that Bollinger's counsel exercised reasonable billing judgment, as the settlement came closer to reality. As such, there is no basis in law to reduce the attorneys' fees Bollinger is owed simply because discussions were had about settlement and dismissal, when the parties continued to litigate, and the case was not settled and dismissed until months later.

## IV.   THE INDEMNITY CLAIM IS RECOVERABLE

Bollinger is not only entitled to defense costs from the *Paz* litigation, but for pursuing indemnity from MTI. In opposition to this demand, MTI directs this Court to *Sher v. Lafayette Insurance Company*, but in that case the Court merely held that the Louisiana Civil Code did not authorize attorneys' fees in a breach of contract action, and that "Neither the statute nor the insurance contract mentions attorney's fees."[34] In contradistinction, the indemnity language at issue in the instant matter does expressly provide for attorneys' fees.[35]

MTI also cites *Signal Oil & Gas Company v. The Barge W-701* in support of its argument

---

[33] *See* Rec. Doc. # 48, p. 11.

[34] 07-2441, p. 18 (La. 04/08/08); 988 So. 2d 186, 201

[35] Rec. Doc. # 46-7, p. 18.

9

that Bollinger cannot recover attorneys' fees and costs in relation to its indemnity claim, yet the contract language in that case is clearly distinguishable.[36] There, the indemnity provision did not expressly state that attorneys' fees would be paid:

> SLAM sought to recover these fees from Sun on Sun's promise to "indemnify and hold (SLAM) harmless from and against any and all loss, cost, damage, expense, claims, actions and liability on account of any and all damage to and loss of or destruction of any property belonging to (SLAM) … arising out of or in connection with the installation, repair and maintenance of said riser on platform A." Because the litany of anticipated liabilities ("loss, cost, damage, expense, claims, actions and liability") did not include the words "attorneys' fees," the district court denied SLAM that item of recovery.[37]

Clearly, that is distinguishable from the instant case, where the indemnity applies to "all liabilities, losses, damages and expenses, including reasonable attorney's fees…."[38]

Moreover, the indemnity obligation in Bollinger's Purchase Order Terms and Conditions is broader than just for defending against personal injury lawsuits, it encompasses all such liabilities "incident to, arising out of, resulting from the activities of Seller, its employees and agents, or its subcontractors and their agents and employees, or in connection with the work to be performed, services to be rendered, or materials to be furnished, under any Purchase Order."[39] This suit for indemnity is incident to, arises out of, and/or resulted from the activities of MTI and the crane it furnished under the Purchase Order to Bollinger. Therefore, all of Bollinger's reasonable attorneys' fees and costs are recoverable.

### V. BOLLINGER'S COUNSEL EXPENDED A REASONABLE AMOUNT OF HOURS

MTI does not dispute that the hourly rates charged by Bollinger's attorneys' and paralegals were reasonable or well within the range of fees previously awarded by this Court.[40] Nonetheless,

---

[36] 654 F.2d 1164, 1177 (5th Cir. 1981).

[37] *Id.*

[38] Rec. Doc. # 46-7, p. 17 (emphasis added).

[39] *Id.*

[40] Rec. Doc. # 48, p. 6, ¶ 3.

it questions the reasonableness of the expended hours claimed by Bollinger.[41] Yet, after making this assertion, MTI only discusses different time frames in which Bollinger is or is not entitled to attorneys' fees and costs (pre-/post-tender, post-offer to dismiss, post-dismissal), and does not dispute the reasonableness of any given task billed by Bollinger's counsel. Bollinger has already shown that all of those arguments fail, and thus the only evidence in the record is that the time spent by Bollinger's counsel was reasonable.[42]

Therefore, for all the reasons put forth in Bollinger's Memorandum in Support of Motion for Summary Judgment on Damages; or, Alternatively, Motion for Judgment on the Stipulated Facts, Bollinger submits that the hours expended by its counsel were reasonable, and no attorneys' fees or costs charged to the defense of the *Paz* Litigation or pursuing this indemnity claim were unreasonable.

## VI. CONCLUSION

Bollinger made a *prima facie* case in its Motion for Summary Judgment; or, Alternatively, Motion for Judgment on the Stipulated Facts, that it is entitled to $230,259.56 in attorneys' fees and costs.[43] Although MTI has made arguments that this amount should be reduced,[44] Bollinger has squarely refuted each of those arguments in this Reply Memorandum.

The time is ripe to award Bollinger attorneys' fees and costs in relation to the indemnity it is owed from MTI. When Bollinger's request for indemnity was tendered is irrelevant, as were the negotiations between the parties to the *Paz* Litigation about settlement and dismissal. The contractual language in Bollinger's favor is broad enough to encompass attorneys' fees in this

---

[41] *Id.* at p. 7, ¶ 1.

[42] Rec. Doc. # 46.

[43] *Id.*

[44] Rec. Doc. # 48.

indemnity action, in addition to the expenses incurred in the *Paz* Litigation; and, at all times, Bollinger's counsel billed its time at reasonable rates and spent a reasonable amount of hours on tasks. Accordingly, Bollinger is entitled to all relief requested of this Court.

                              Respectfully submitted,

                              **REICH, ALBUM & PLUNKETT, L.L.C.**

                              /s/Robert S. Reich
                              ROBERT S. REICH, T.A. (#11163)
                              MICHAEL T. WAWRZYCKI (#30788)
                              Two Lakeway Center, Suite 1000
                              3850 N. Causeway Boulevard
                              Metairie, Louisiana 70002
                              Telephone: (504) 830-3999
                              Facsimile: (504) 830-3950
                              Email: rreich@rapllclaw.com
                              Email: mwawrzycki@rapllclaw.com
                              ***Attorneys for Bollinger Marine Fabricators,***
                              ***L.L.C. and Bollinger Lockport, L.L.C.***

## CERTIFICATE OF SERVICE

     I hereby certify that a copy of the above and foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filings to all counsel of record on this 26th day of May, 2015.

                              /s/Robert S. Reich
                              ROBERT S. REICH