UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BOLLINGER MARINE FABRICATORS, LLC          CIVIL ACTION
AND BOLLINGER SHIPYARDS LOCKPORT LLC

VERSUS                                      NO: 14-1743

MARINE TRAVELIFT, INC.                      SECTION: R(2)


**ORDER AND REASONS**

The Court conducted a trial on the stipulated record of the claim of plaintiff Bollinger Marine Fabricators, LLC and Bollinger Shipyards Lockport, LLC for attorneys' fees and defense costs against defendant Marine Travelift, Inc.[1]  The Court has diversity jurisdiction under 28 U.S.C. § 1332.  After reviewing all of the evidence, the Court rules as follows.  To the extent a finding of fact constitutes a conclusion of law, the Court adopts it as such. To the extent a conclusion of law constitutes a finding of fact, the Court adopts it as such.

---

[1]  Bollinger's submission is styled as a motion for summary judgment or, alternatively, for judgment on the stipulated facts.  The summary judgment deadline has passed, *see* R. Doc. 17 at 1 (requiring all non-evidentiary pretrial motions be filed and served in sufficient time to permit hearing thereon no later than March 11, 2015), and the parties expressly consented to a bench trial on the stipulated record at the pre-trial conference held April 14, 2015, *see* R. Doc. 44 (Trial Preparation and Procedures Order).  Accordingly, the Court construes the motion as one for judgment on the stipulated record.

## I. BACKGROUND

This dispute arises out of Bollinger's indemnity claim for attorneys' fees and defense costs incurred in defending against a personal injury lawsuit brought by Inosencio Paz in the United States District Court for the Southern District of Texas (the "*Paz* litigation").

In 2005, Bollinger built a barge, the "MONTVILLE," for Moran Towing Company.  The specifications for the barge required a hatch cover crane.  Under Purchase Order BMF 224357, Bollinger purchased a HTC600D hatch crane from Marine Travelift to install on the barge.  Purchase Order BMF 224357 is governed by the Purchase Order Terms and Conditions available on Bollinger's website.  The terms include an indemnity provision providing

> Seller shall indemnify and hold Buyer harmless against all liabilities, losses, damages and expenses, including reasonable attorney's fees, for personal injuries, death or property damage incident to, arising out of, [*sic*] resulting from the activities of Seller, its employees and agents, or its subcontractors and their agents and employees, or in connection with the work to be performed, services to be rendered, or materials to be furnished, under any Purchase Order, except in those instances where such liability, losses, damages or expenses are caused solely and directly by Buyer's negligence.

In February 2013, Inosencio Paz, an employee of Moran Towing, was injured by the crane while working as a member of the United States Maritime Service cleaning crew aboard the MONTVILLE barge. The injury occurred when a Moran Towing crane operator caused the crane to move forward and strike Paz as he stood on the crane's dedicated track.  Paz sued the barge owner, Moran Towing, claiming

the accident resulted solely from its employee's negligent operation of the crane, particularly the failure to use a required signalmen or spotter to ensure the safe movement of the crane. Paz made no claim against either Marine Travelift, the crane manufacturer, or Bollinger, the barge manufacturer.

Moran Towing filed a third-party complaint against Bollinger and Marine Travelift claiming a right of contribution for any amounts it may be required to pay Paz "as a result of any allegations related to the crane, warning lights and/or audible alarm." Moran Towing later filed an amended third-party complaint in which it reiterated this allegation.[2] Paz then filed a first amended complaint against Moran Towing, Bollinger, and Marine Travelift, asserting the same allegations as did Moran Towing against Bollinger and Marine Travelift as to the crane, warning lights, and/or audible alarm. Specifically, Paz alleged negligence by Bollinger and Marine Travelift "in the manufacturing, design, marketing and subsequent handling, inspection and/or servicing of the . . . crane and its warning light and audible alarm;" "breach of contract including breach of implied warranties for the crane,

---

[2]     R. Doc. 25, Ex. 4 (Bollinger and Marine Travelift "failed to exercise reasonable care when designing, selecting, manufacturing, installing and testing the crane's warning lights and horns;" Bollinger and Marine Travelift "are liable for their breach of implied warranties related to the design, manufacture, installation and fabrication of the crane, warning light and audible alarm system and for the consequential and incidental damages (to the extent that the Plaintiffs are entitled to recover damages);" Bollinger and Marine Travelift "are strictly liable for placing the crane with its warning light and audible alarm system into the stream of commerce . . . .").

warning light and audible alarm;" "breach of the warranty of workmanlike performance for the crane, warning light and audible alarm;" and strict liability "for placing the crane, warning light and audible alarm . . . into the stream of commerce."  Paz also alleged negligence based on the absence of a "placard with general operating instructions" affixed to the crane.  Paz re-alleged these claims in his second amended complaint.

On February 21, 2014, Bollinger filed a counterclaim against Moran Towing in the *Paz* litigation seeking indemnity based upon the Vessel Construction Agreement between Moran Towing and Bollinger. In a letter dated May 7, 2014, Bollinger also sought defense and indemnity from Marine Travelift on the basis of the Purchase Order Terms and Conditions.[3]  Marine Travelift never provided a defense or indemnity based on this request.  On June 16, 2014, while the *Paz* litigation was still pending, Bollinger filed this indemnity action against Marine Travelift in the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana.  Marine Travelift timely removed the matter to this Court on July 31, 2014.

On July 3, 2014, counsel for Moran Towing offered to dismiss with prejudice its claims against Bollinger and Marine Travelift in the *Paz* litigation in exchange for (1) a reciprocal dismissal of any claims Bollinger and Marine Travelift had against Moran Towing; (2) withdrawal of any pending discovery directed to Moran Towing by Bollinger and Marine Travelift; and (3) withdrawal of any pending

---

[3]     R. Doc. 20, Ex. 3.

motions asserted against Moran Towing by Bollinger and Marine Travelift.[4] On July 8, 2014, Bollinger's counsel also asked Paz's counsel to dismiss Bollinger:

> As I advised previously Moran has agreed to dismiss all claims against my client. You, on the other hand, recently informed me that you were backing-out of your previous agreement to dismiss my client if Moran would agree to do so.[5]

On July 11, 2014, Bollinger's counsel again asked Paz's counsel to dismiss Bollinger.[6] Counsel for Paz explained the circumstances of his offer to dismiss Bollinger voluntarily as follows:

> During the course of the litigation, counsel for Bollinger, Attorney Robert Reich, asked Paz to dismiss any and all claims made against Bollinger in the action. In response to this request, I verbally informed Attorney Reich that Paz would agree to dismiss Bollinger from the action if Bollinger were first able to secure a similar dismissal from the third-party claims being advanced against Bollinger by Moran Towing.[7]

He went on to explain:

> Contrary to the assertions contained in the correspondence from counsel[, dated July 8, 2014], I did not "back-out" on Paz's offer to dismiss Bollinger from this action. Rather, I verbally informed Attorney Reich that, consistent with our prior discussions, Paz would agree to dismiss his claims against Bollinger following the receipt of documented proof of Bollinger's dismissal from the claims asserted by Moran Towing. The required proof of dismissal by way of a signed release or other agreement was not forthcoming from Bollinger and

---

[4]     R. Doc. 48, Ex. 3 at 1.

[5]     R. Doc. 48, Ex. 5 at 14.

[6]     *Id.* at 15.

[7]     *Id.* at 2.

5

therefore, Paz's claims against Bollinger were not dismissed until October 2014.[8]

On October 20, 2014, the United States District Court for the Southern District of Texas granted a Joint Motion to Dismiss filed by Moran Towing and Bollinger requesting that all claims asserted by or against them be dismissed with prejudice.  On the same day, the district court entered a Final Judgment dismissing with prejudice all of Paz's claims against Moran Towing, Bollinger, and Marine Travelift.  The Final Judgment indicated that the parties settled all claims.  As a result, there was neither a trial on the merits in the *Paz* litigation nor any judgment requiring Bollinger to pay for personal injuries sustained by Paz.

On April 13, 2015, this Court granted Bollinger's motion for summary judgment, holding that Bollinger is entitled to indemnification for attorneys' fees and defense costs incurred in defending the underlying suit.  At the pre-trial conference, the parties agreed to submit the issue of damages to a bench trial on a stipulated record.  The issue before the Court is what attorneys' fees and defense costs Marine Travelift owes to Bollinger under the indemnity agreement.

---

[8]      *Id.*

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Legal Standard

"A fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) (citing *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000)). "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Id.* at 461. Because this Court is sitting in diversity and Bollinger's right to attorneys' fees is set forth by contract, Louisiana law governs the claim for attorneys' fees.

Under Louisiana law, courts may exercise their inherent power to regulate the practice of law to inquire as to the reasonableness of attorneys' fees. *Dep't of Transp. & Dev. v. Williamson*, 597 So. 2d 439, 441-42 (La. 1992). In determining reasonableness, a court may consider (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) the attorneys' legal knowledge, attainment, and skill; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge. *Id.* at 442; *Rivet v. Dep't of Transp. & Dev.*, 800 So. 2d 777, 780 n.3 (La. 2001); *Fourchon Docks, Inc. v. Milchem Inc.*, 849 F.2d 1561, 1568 (5th Cir. 1988) (noting that these guidelines are permissive and consideration of all of them is not

necessary).   In addition, the court should evaluate attorneys' fees for "billing judgment"--that is, attorneys should exclude any "excessive, redundant, or unproductive hours."   *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996); *see also Covington v. McNeese State Univ.*, 118 So. 3d 343, 357 (La. 2013).

These considerations derive from Rule 1.5(a) of the Rules of Professional Conduct.   *Williamson*, 597 So. 2d at 442 n.9.   Among the factors listed in Rule 1.5(a) is "[t]he fee customarily charged in the locality for similar legal services."   *Id.*   An accepted method with which to begin a calculation of a fee award under Louisiana law is to multiply the number of hours worked by an hourly rate the court deems reasonable.   *See Fourchon Docks*, 849 F.2d at 1568.

### B. Bollinger's Indemnity Claim is Not Premature

Marine Travelift first contends that it is not liable for Bollinger's claimed fees and expenses because Bollinger's indemnity claim is premature.   This argument is without merit.

In Bollinger's indemnity suit against Marine Travelift in this Court, the parties filed cross-motions for summary judgment on the issue of indemnity.[9]   In support of its motion, Marine Travelift made three arguments: (1) an award of indemnity is premature because Bollinger has not been cast in judgment, (2) the indemnity agreement excludes indemnification for claims, demands, actions, or

---

[9]      *See* R. Doc. 20; R. Doc. 25.

proceedings, and (3) the claims in the underlying action related to products Marine Travelift provided outside of the scope of the indemnity agreement.  The Court rejected these arguments and found that Marine Travelift owed Bollinger indemnity for attorneys' fees and costs incurred in the underlying *Paz* litigation.[10]  Accordingly, the Court granted Bollinger's motion for summary judgment and denied Marine Travelift's motion for summary judgment.[11]  Marine Travelift did not move the Court to reconsider this Order.

Bollinger filed its damages memorandum on May 5, 2015.[12]  Marine Travelift filed its memorandum in opposition on May 20, 2015, over a month after the Court denied Marine Travelift's motion for summary judgment.[13]  In its opposition to Bollinger's damages memorandum, Marine Travelift asserts for the first time that Bollinger's indemnity claim is premature because there has not been an affirmative determination in the *Paz* litigation that Bollinger was not at fault.  Marine Travelift had ample opportunity to assert this argument in its briefing related to the cross-motions for summary judgment, but failed to do so.  Nevertheless, the Court addresses Marine Travelift's new contentions, and finds them to be without merit.

---

[10]   R. Doc. 43.

[11]   *Id.*

[12]   *See* R. Doc. 46.

[13]   *See* R. Doc. 48.

Initially, the Court notes the Louisiana Supreme Court's guidance that "a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid." *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 51 (La. 2005). Here, there is no dispute that the underlying lawsuit has concluded and that Bollinger has incurred defense costs.

Marine Travelift now contends that the indemnity agreement's language allowing indemnity "except in those instances where such liability, losses, damages, or expenses are caused solely and directly by Buyer's negligence," renders Bollinger's indemnity claim premature because there was no affirmative finding in the *Paz* litigation that Bollinger's negligence, if any, was *not* the cause of Paz's injury. The Court emphasizes that Marine Travelift failed to raise this argument on summary judgment and has never suggested that the underlying suit arose from Bollinger's sole and direct negligence. Indeed, Marine Travelift has never asserted that Bollinger acted negligently whatsoever. The Court also emphasizes that Marine Travelift's argument contradicts its primary argument on summary judgment. Marine Travelift initially asserted that Bollinger was not entitled to indemnity because it had not been cast in judgment (*i.e.*, found at fault); Marine Travelift now contends that Bollinger is not entitled to indemnity because it was not affirmatively deemed free from fault in the *Paz* litigation.

Marine Travelift cites *Morella v. Board of Commissioners of Port of New Orleans*, 888 So. 2d 321 (La. App. 4 Cir. 2004), in support.  In *Morella*, the indemnity agreement provided that the indemnitor would not indemnify the indemnitee "for its negligence or fault or that of its officers, directors, employees, representatives, agents or invitees." *Id.* at 324.  The district court ruled that the indemnitee was entitled to indemnity before the suit concluded and before the negligence of the indemnitee had been determined. *Id.* at 324-25.  On appeal, the Louisiana Fourth Circuit reversed, holding that the indemnity finding was premature because the suit was still pending and there had not been a determination as to whether the indemnitee was free from fault. *Id.* at 328.

Marine Travelift also relies on *Thibodaux v. Southern Natural Gas Co.*, 705 So. 2d 1287 (La. App. 4. Cir. 1998).  There, the agreement conditioned the indemnitee's right to indemnity on the loss occurring as a result of the indemnitor's negligence. *Id.* at 1288.  Because the district court adjudged the indemnitor free from fault, the court held that no indemnity was owed under the agreement. *Id.*

The cases Marine Travelift cites are inapposite and do not advance its tardy argument.  In the two cases cited, indemnity was conditioned on, in one instance, the indemnitee's being completely free of fault, *Morella*, 888 So. 2d at 324, and in the other, the indemnitor's being at fault, *Thibodaux*, 705 So. 2d at 1288.  In

11

*Morella*, the court denied indemnity as premature because the underlying suit was still pending--that is, the possibility remained that the indemnitee could be found at fault and thus, not entitled to indemnity.  888 So. 2d at 324-25.  In *Thibodaux*, the court determined the indemnitor was not at fault.  Because the indemnitor's fault was a prerequisite to indemnity under the parties' agreement, the indemnitor owed no indemnity.  *Thibodaux*, 705 So. 2d at 1288.

Here, Bollinger is entitled to indemnity for "*all* liabilities, losses, damages and expenses, including reasonable attorney's fees, for personal injuries, death or property damage . . . *except* in those instances where such liability, losses, damages or expenses are caused solely and directly by [Bollinger's] negligence."[14]  This means that Bollinger is entitled to indemnity with one exception: a finding that Bollinger is solely and directly liable for the loss because of Bollinger's negligence.  Thus, Bollinger's right to indemnity is not precluded by the absence of a determination of Bollinger's negligence; rather, it is precluded only by a finding that Bollinger is solely and directly liable.

The underlying suit has concluded, and Bollinger has been dismissed with prejudice without paying any damages or settlement amounts on the *Paz* claim.  Bollinger was not found to be solely and directly liable for Paz's injuries, and Marine Travelift admits that it never will be.  Further, Marine Travelift does not proffer

---

[14]    R. Doc. 46, Ex. C at 17 (emphasis added).

evidence or even suggest that evidence exists that Bollinger was at fault to any degree whatsoever.  Accordingly, because the condition necessary to preclude Bollinger's right to indemnity will never occur, Bollinger's claim for indemnity is not premature.

**C. Bollinger's Incurred Fees and Costs**

Bollinger first incurred attorneys' fees on February 3, 2014, and began incurring defense costs on February 13, 2014.  On October 20, 2014, the district court in the *Paz* litigation entered an Agreed Final Judgment, dismissing with prejudice all allegations by Paz and Moran Towing against both Bollinger and Marine Travelift.

Bollinger and Marine Travelift have stipulated to the accuracy of the fees and costs Bollinger incurred during different time periods as follows: before May 6, 2014, $51,453.70 in fees and $3,663.48 in costs; between May 7 and July 2, 2014, $74,360.50 in fees and $18,495.81 in costs; between July 3 and July 10, 2014, $4,926 in fees and $1,538.60 in costs; between July 11 and October 20, 2014, $42,087 in fees and $11,569.45 in costs; and after October 21, 2014, $21,030.50 in fees and $1,134.52 in costs.  These amounts total $193,857.70 in fees and $36,401.86 in costs.  In support of these amounts, Bollinger attaches invoices reflecting fees and costs incurred.

Bollinger seeks recovery of fees and costs incurred both in defending the *Paz* litigation and in the instant suit.  In its request, Bollinger makes no distinction between fees and costs incurred in defending against the underlying suit and pursuing

13

indemnity against Marine Travelift and Moran Towing. Marine Travelift asserts that Bollinger is not entitled to recover fees and costs incurred in relation to (1) Bollinger's claims against Marine Travelift for indemnity, (2) Bollinger's claims against Moran Towing for indemnity, (3) Bollinger's fees and costs incurred before tendering its defense to Marine Travelift, and (4) Bollinger's fees and costs incurred after Moran Towing and Paz offered to dismiss Bollinger in July 2014.

### D. Analysis

#### 1. Hourly Rate

Bollinger's counsel charged the following rates. Four partners worked on the case. Robert Reich initially billed $250 per hour and later $300 hour. Lawrence Plunkett billed $210 per hour. Micahel Wawrzycki initially billed $210 per hour and later $225 per hour. Barbara Bosetta billed $225 per hour. Reich, Plunkett, Wawrzycki, and Bosetta have practiced law for 38, 26, 9, and 25 years, respectively.

Three associates also worked on the case. Jonathan Markovich billed $175 per hour. Christy Johnson billed $175 per hour. Jenna Ard billed $100 per hour. Markovich, Johnson, and Ard have practiced law for 4, 9, and 7 years, respectively.

Finally, four paralegals worked on the case. Esta Smith billed $58 per hour and later $70 per hour. Marilyn Linscheid billed $70 per hour. Anne Mollere billed $70 per hour. Daniel Levy billed $50 per hour. Smith, Linscheid, and Mollere had 20,

14

20, and 14 years of experience, respectively.  Levy had little experience, but was a law school graduate preparing for the bar exam.

Marine Travelift stipulates that the hourly rates charged by Bollinger's counsel are reasonable.  As the Fifth Circuit holds, "[w]hen the rate is not contested, it is *prima facie* reasonable." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995).  The Court finds that the rates are reasonable.  *See Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 701 (E.D. La. June 25, 2009) (approving $300 per hour for partners, $225 per hour for associates, and $75 per hour for paralegals).

### 2. Hours Reasonably Expended

#### i. Bollinger Is Not Entitled to Indemnity for Fees and Costs Incurred in Establishing its Right to Indemnity Against Marine Travelift

Bollinger seeks fees incurred in establishing its right to indemnity against Marine Travelift.  As the following authorities indicate, Bollinger is not entitled to recover these fees because they are outside of the scope of the parties' indemnity agreement.

In *Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164 (5th Cir. 1981), the Fifth Circuit, applying Louisiana law, expressed the general rule that "recovery of attorneys' fees for services expended in establishing [a] right to recover on [an] indemnity agreement" is not permitted.  *Id.* at 1179; *see also Tex. E. Transmission Corp. v. McMoRan Offshore Expl. Co.*, 877 F.2d 1214, 1229 (5th Cir. 1989); *Dow Chem. Co. v. M/V Roberta Tabor*, 815 F.2d

15

1037, 1046 (5th Cir. 1987). Citing *Signal Oil*, the Louisiana First Circuit Court of Appeals held: "It is the general law of indemnity that although an indemnitee may recover . . . costs and expenses incurred in the defense of a claim against the principal, nevertheless, the indemnitee may not recover those costs and expenses incurred simply establishing the indemnitee[']s right to indemnification from the indemnitors." *State v. Laconco, Inc.*, 430 So. 2d 1376, 1385 (La. App. 1 Cir. 1983). Louisiana appellate courts have since clarified: "[w]hile it is the general rule . . . that an indemnitee may recover from its indemnitor only those costs and expenses incurred in defense of a claim against the principal demand, when specifically provided for by contract attorneys' fees incurred in *establishing* the right to indemnity may also be recovered." *Wuertz v. Tobias*, 512 So. 2d 1209, 1212 (La. App. 5 Cir. 1987) (citing *Morris v. Schlumberger, Ltd.*, 445 So. 2d 1242 (La. App. 3 Cir. 1984); *Commercial Union Ins. Co. v. Melikyan*, 430 So. 2d 1217 (La. App. 1 Cir. 1983)).

In *Wuertz*, the Louisiana Fifth Circuit Court of Appeal held that the indemnitee was entitled to recover attorneys' fees and costs associated with establishing its right to indemnity because the parties' indemnity clause included the following language: "*Lessee also agrees to pay all reasonable expenses and attorneys' fees incurred by Lessor in connection with the provisions of this paragraph.*" *Id.* at 1211-12 (emphasis in original). The Louisiana First Circuit Court of Appeal also upheld a district court's award

16

of fees and costs associated with establishing the indemnitee's right to indemnity when the indemnity provision was "general and broad," requiring the court to inquire as to the parties' common intent. *Naquin v. La. Power & Light Co.*, 951 So. 2d 228, 232 (La. App. 1 Cir. 2006). In *Naquin*, the indemnity provision was limited to indemnity for "personal injury and/or loss of life and/or damage or destruction of the property of third persons," yet the Louisiana First Circuit read the language broadly to include a right to indemnity for fees and costs associated with establishing a right to indemnity. *Id.* at 230, 232. A dissenting judge, however, wrote, "the indemnity clause contained in the agreement fails to specifically provide for the recovery of attorney fees incurred in establishing the right to indemnification." *Id.* at 234 (Welch, J., concurring in part and dissenting in part).

Considering both of these cases, the Fifth Circuit holds that "[f]or a party to be indemnified for costs related to pursuing an indemnity claim, the contract must specifically provide for such a recovery." *Dowling v. Ga.-Pac. Corp.*, 302 F. App'x 283, 288 (5th Cir. 2008) (citing *Wuertz*, 512 So. 2d at 1212). The Fifth Circuit cited *Naquin* only for the principle that "[i]f an indemnity clause is broad and does not address the indemnitee's recovery, the agreement as a whole may be examined to ascertain the parties' intent." *Id.* (citing *Naquin*, 951 So. 2d at 232). In *Dowling*, the agreement provided indemnity for losses "arising out of or resulting from the performance or non-performance of the Work or

17

this Contract." *Id.*   Because there was "no reference to reimbursement of attorneys' fees in connection with pursuing an indemnity claim," the Fifth Circuit held that the agreement lacked the specific language necessary to permit recovery of attorneys' fees incurred in establishing the right to indemnity.  *Id.*   The Fifth Circuit has since held that a provision providing indemnity "against all claims, suits, losses, liabilities, expenses, demands, costs (including reasonable attorney's fees) and/or damages as a result of such illness, injury, or death," is a "general indemnity clause [that] does not specifically provide for recovery of attorneys' fees in enforcing the indemnity provision." *Becker v. Tidewater, Inc.*, 586 F.3d 358, 375 (5th Cir. 2009).  Therefore, the court held that "the prohibition barring the recovery of legal fees incurred in establishing a right to indemnification" applied.  *Id.* (citing *Dow Chem.*, 815 F.2d at 1046).

Here, the express language of the indemnity agreement limits indemnification to "liabilities, losses, damages and expenses" incurred as a result of "personal injuries, death or property damage."  The agreement includes no language permitting recovery of fees and costs incurred in enforcing the indemnity provision.  *See Becker*, 586 F.3d at 375.  Accordingly, because the agreement does not permit recovery of fees and costs incurred in pursuing indemnification, Bollinger is not entitled to indemnity for fees and costs incurred in establishing its right to indemnity from Marine Travelift.

The Court has examined Bollinger's invoices and finds that the following fees and costs are not recoverable under the foregoing analysis.  Initially, the Court finds that all fees and costs incurred after October 21, 2014, were incurred for the purpose of Bollinger's establishing its right to indemnity against Marine Travelift.[15]  Therefore, the $21,030.50 in fees incurred after October 21, 2014, are not recoverable.

The Court has also reviewed Bollinger's invoices dated before October 21, 2014, to determine whether Bollinger incurred any costs related to its indemnity claim during this period.  Many of counsel's invoice entries consist of block billing, which make the Court's task of segregating recoverable fees from non-recoverable fees particularly challenging.  When confronted with block billing containing recoverable and non-recoverable entries, some courts have excluded all time for those entries.  *See e.g.*, *HCC Aviation Ins. Grp., Inc. v. Emps. Reinsurance Corp.*, No. 3:05-CV-744(BH), 2008 WL 850419, at *7 (N.D. Tex. Mar. 21, 2008) (excluding an entire entry when attorney failed to provide the number of hours spent on each task within the entry, and holding that the court therefore could not "segregate the specific number of hours expended on [non-recoverable tasks] from the other tasks performed"

---

[15]     Bollinger's invoices contain one entry on October 22, 2014, that pertained to defense of the underlying suit, but the parties included this amount in the total of fees and costs incurred before October 21, 2014.  *See* R. Doc. 45 at 4 n.12 ("This total also includes a paralegal entry on October 22, 2014, which relates to processing doctors' invoices for records and was incurred in relation to defending against plaintiff's allegations, even though paid after the Judgment was rendered.").

(citing *Rappaport v. State Farm Lloyds*, No Civ.A. 3:97-CV-2747, 2000 WL 769224, at *4 (N.D. Tex. June 13, 2000))); *see also Kellstrom*, 50 F.3d at 324 (noting that documentation of attorneys' fees must be sufficient to allow the court to determine the reasonable award amount).  Other courts have reduced the time. *See, e.g.*, *White v. Imperial Adjustment Corp.*, No. Civ. A. 99-3804, 2005 WL 1578810, at *12 (E.D. La. June 28, 2005) (assuming that counsel spent her time equally between grouped tasks when counsel failed to segregate her time between recoverable and non-recoverable tasks).

Having reviewed the invoices,[16] the Court finds that the following entries, before October 21, 2014, pertain in part to Bollinger's indemnity claim.

- 3/18/2014: JM, 2.90 hours, BMF0012
- 5/6/2014: JM, 7.10 hours, BMF0026
- 5/7/2014: JM, 8.70 hours, BMF0027
- 5/22/2014: JM, 8.10 hours, BMF0033
- 5/22/2014: ALM, 5.70 hours, BMF0033
- 5/25/2014: JM, 4.00 hours, BMF0034
- 5/29/2014: JM, 5.30 hours, BMF0036
- 5/30/2014: JM, 5.80 hours, BMF0037
- 6/1/2014: JM, 3.70 hours, BMF0040
- 6/13/2014: JM, 7.00 hours, BMF0044
- 6/25/2014: JM, 1.80 hours, BMF0047

---

[16]   R. Doc. 45, Ex. A.

- 7/24/2014: JM, 4.10 hours, BMF0059

- 7/25/2014: ALM, 1.50 hours, BMF0059

- 8/7/2014: RSR, 0.50 hours, BMF0066

- 8/8/2014: ALM, 2.20 hours, BMF0066

- 8/13/2014: JM, 3.50 hours, BMF0068

Most often, these entries contained one or several tasks related to Bollinger's indemnity claim as well as other tasks related to the underlying suit. Rather than undertaking the inexact and speculative method of attempting to determine the amount of time spent on the indemnity claim, the Court reduces each entry by fifty percent.[17]  This reduction totals $5,825.25.

Further, the following entries, which total $1,175 in attorneys' fees, consist solely of tasks pertaining to Bollinger's indemnity claim.

- 5/5/2014: RSR, 4.0 hours, BMF0025

- 5/12/2014: RSR, 1.0 hours, BMF0029

- 6/13/2014: RSR, 0.10 hours, BMF0044

- 8/8/2014: RSR, 0.10 hours, BMF0066

- 8/28/2014: JM, 3.80 hours, BMF0070

- 8/28/2014: LRP, 1.00 hours, BMF070[18]

---

[17]    The Court reduces these entries by fifty percent because tasks related to the indemnity claim pervade these entries to varying extents.  A fifty percent reduction accounts for this variability.

[18]    Counsel has redacted much of this entry.  The Court assumes this task relates to Bollinger's indemnity claim.  At any rate, because counsel has redacted the tasks, it has failed to show that it is entitled to recover for this time.

21

Bollinger is not entitled to recover anything for these entries.

> *ii. Bollinger Is Not Entitled to Indemnity for Fees*
> *and Costs Incurred in Pursuing Indemnity from Moran*
> *Towing*

Bollinger further seeks recovery of fees and costs expended in seeking indemnity against Moran Towing, a third-party defendant in the *Paz* litigation. Marine Travelift contends that such recovery is outside the scope of the parties' agreement. Bollinger cites no law advancing its position that it is entitled to indemnity for this pursuit and, in its reply memorandum, does not challenge the precedent Marine Travelift cites in opposition. Because Bollinger has the burden to show it is entitled to indemnity, but has offered no support for its position, Bollinger has failed to carry its burden. Moreover, while Bollinger's claims against Moran Towing arise from the underlying suit, they do not fairly implicate the terms of Bollinger and Marine Travelift's indemnity agreement. The indemnity agreement includes no language indicating Marine Travelift contemplated indemnifying Bollinger for its prosecution of separate claims. *See Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1221 (5th Cir. 1986) (holding the parties' indemnity provision did not cover claims prosecuted by the indemnitee because such a intent was not expressed in "more discernable" language). Accordingly, Bollinger is not entitled to indemnity for fees and costs incurred in pursuing indemnity against Moran Towing.

The Court has identified two entries related to Bollinger's pursuit of indemnity from Moran Towing: one on February 4, 2014,

reflecting "NO CHARGE,"[19] and another on February 19, 2014.[20]   The latter entry is in the form of block billing containing multiple tasks totaling 7.50 hours.   Because counsel has not specified the amount of time it expended on the specific task at issue, the Court reduces the time for this entry by fifty percent, or $656.25.

> *iii. Bollinger Is Entitled to Pre-Tender Attorneys' Fees*

Marine Travelift contends that Bollinger is not entitled to indemnity for fees and costs incurred before it tendered its defense to Marine Travelift.   In support, Marine Travelift cites cases holding that an insurer's duty to defend does not arise until the insurer receives notice of a claim or suit is received.[21] Because Marine Travelift is an indemnitor, not an insurer, these case are inapposite.   Moreover, the indemnification clause at issue provides no notice requirement, and the Court will not impute one. *See Fontenot*, 791 F.2d at 1221 ("Where the indemnity agreement does not require notice, the courts will not infer a notice requirement as a condition precedent to a right to recover on the indemnity contract." (applying Texas law)); *Premier Corp. v. Econ. Research Analysts*, 578 F.2d 551, 554 (4th Cir. 1978) ("[T]he general rule

---

[19]   R. Doc. 45, Ex. A at BMF0005.

[20]   *Id.* at BMF0006.

[21]   *Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1178 (5th Cir. 1992); *Transcon. Pipe Line Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 378 F. Supp. 2d 729, 738-39 (M.D. La. 2005); *Rovira v. LaGoDa, Inc.*, 551 So. 2d 790, 796 (La. App. 5 Cir. 1989); *Gully & Assocs., Inc. v. Wausau Ins. Cos.*, 536 So. 2d 816, 818 (La. App. 1 Cir. 1988).

[is] that notice is unnecessary unless the contract of indemnification requires it."); *Smithson v. Wolfe*, No. C94-1015 MJM, 1999 WL 33656866, at *4 (N.D. Iowa July 19, 1999) ("[T]he general rule is that an indemnitee is not required to provide notice, let alone tender a defense, to the indemnitor under an indemnification contract, unless the contract itself requires notification or tender of defense."). Accordingly, Bollinger is entitled to indemnity for fees and costs incurred before tendering the defense of the underlying suit to Marine Travelift.

> *iv. Bollinger Is Entitled to Indemnity for Fees Incurred after Moran Towing and Paz Offered to Voluntarily Dismiss Bollinger*

Finally, Marine Travelift contends that Bollinger is not entitled to recover attorneys' fees and costs incurred after Moran Towing and Paz offered to dismiss Bollinger in July 2014.

On July 3, 2014, counsel for Moran Towing offered to dismiss with prejudice its claims against Bollinger and Marine Travelift in exchange for (1) a reciprocal dismissal of any claims Bollinger and Marine Travelift had against Moran Towing; (2) withdrawal of any pending discovery directed to Moran Towing by Bollinger and Marine Travelift; and (3) withdrawal of any pending motions asserted against Moran Towing by Bollinger and Marine Travelift.[22]  On July 8, 2014, Bollinger's counsel asked Paz's counsel to agree to dismiss Bollinger, in light of Moran Towing's agreeing to dismiss

---

[22]    R. Doc. 48, Ex. 3 at 1.

its claims against Bollinger.[23]   On July 11, 2014, Bollinger's counsel again asked Paz's counsel to dismiss Bollinger.[24] According to counsel for Paz, he did not do so until October 2014 because he told Bollinger's counsel that he required documentation that Moran Towing had also dismissed or released Bollinger.[25]  Counsel for Paz said that Bollinger was not forthcoming with the documentation that he requested.

In response, Bollinger asserts that the fees incurred after the offers of dismissal were reasonable because it had a duty to continue defending against the underlying action until it was dismissed.   In addition, Bollinger represents, and its invoices support, that though counsel was still participating in the *Paz* litigation in July and August, counsel spent significantly less time on the matter when it became clear the parties were moving forward with settlement.

Generally, it is reasonable for counsel to continue its defense until the underlying lawsuit is dismissed.  The pendency of settlement negotiations does not require counsel to stop all participation in ongoing litigation.  This is particularly true in a case in which the court has imposed an aggressive schedule. Bollinger was subject to impending discovery and filing deadlines in August, as well as a November trial date.  After receiving

---

[23]    R. Doc. 48, Ex. 5 at 14.

[24]    *Id.* at 15.

[25]    *Id.* at 2.

offers of dismissal in July, but before securing full dismissal from the case, Bollinger's counsel continued to participate in previously scheduled discovery in the event that the proposed settlement was not finalized.  The Court finds counsel's decision to decrease Bollinger's litigation involvement in September and October -- shortly before the motion to dismiss was filed and while it was pending before the court -- to be an appropriate exercise of billing judgment.  Moreover, though Moran Towing offered dismissal to Bollinger in July, it did not move to dismiss its claims against Bollinger until September 30, 2014, which the court did not grant until October 20, 2014.  Marine Travelift has not offered any evidence to indicate that Bollinger was responsible for Moran Towing's delay in filing the motion to dismiss.

The Court is not eager to employ judgment by hindsight and question Bollinger's litigation strategy.  *See Ortiz v. Regan*, 980 F.2d 138, 140 (2d Cir. 1992) ("A district court should not rely on informal negotiations and hindsight to determine whether further litigation was warranted and, accordingly, whether attorney's fees should be awarded."); *Cowan v. Prudential Ins. Co. of Am.*, 728 F. Supp. 87, 92 (D. Conn. 1990), *rev'd on other grounds*, 935 F.2d 522 (2d Cir. 1991) ("A rule giving trial judges discretion to deny [post-settlement offer] fees where the refusal of an offer is shown after the fact to have been unwise might well lead to very uneven results and even misuse in cases in which judges become involved in settlement negotiations.").  This is especially so because Marine Travelift received the same offer of dismissal from Moran Towing,

26

yet, like Bollinger, did not achieve dismissal until October 20, 2014. Accordingly, the Court will not reduce Bollinger's fees for the period after the offers of dismissal.

### v. Block Billing

In considering the reasonableness of the fees Bollinger incurred, the Court has also examined all entries pertaining to defense of the *Paz* litigation that are generally recoverable. Unfortunately, in many of its entries, Bollinger's counsel used "block billing" to record the amount of time spent on each task. In other words, counsel provided daily entries consisting of numerous tasks and assigned a total number of hours to the collective tasks. Because Bollinger's counsel billed in this manner, the Court is unable to determine the reasonableness of time billed for individual tasks. *See Canon U.S.A., Inc. v. S.A.M., Inc.*, Civ. A. No. 07-1201, 2009 WL 35334, at *4 (E.D. La. Jan. 6, 2009) (Block billing "can make it impossible for the court to determine the reasonableness of the hours spent on each task . . . ."); *Abshire v. Mar-Con, Inc.*, Civ. A. No. 96-409, 1998 WL 404796, at *3 (E.D. La. July 16, 1998) (denying recovery in part for entries when counsel combined "several tasks on different claims under a single time billing and [failed] to clearly describe the time spent or identify the claim to which the activity applied"); *see also Kellstrom*, 50 F.3d at 324 ("A fee applicant has the burden to maintain billing time records in a manner that will

enable a reviewing court to identify distinct claims." (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983))).

As noted earlier, cases in which counsel submits invoices consisting of block billing, some courts have found a percentage decrease of the fee appropriate. *See, e.g.*, *Canon U.S.A.*, 2009 WL 35334, at *4 (explaining that "the method most often used to compensate for block billing is a flat reduction of a specific percentage from the award"). Courts have reduced the fee award for block billing by varying percentages. *See id.* (reducing fee award by twenty-five percent for block billing); *Johnson-Richardson v. Tangipahoa Parish Sch. Bd.*, Civ. A. No. 12-0140, 2013 WL 5671165, at *4 (E.D. La. Oct. 15, 2013) (reducing fee award by thirty percent for block billing); *Delgado v. Village of Rosemont*, No. 03 C 7050, 2006 WL 3147695, at *7 (N.D. Ill. Oct. 31, 2006) (reducing fee award by thirty-five percent for block-billing); *Assoc. of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG*, No. 04 Civ. 3600(SWK), 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005) (reducing fee award by twenty-five percent for block billing).

Here, the Court finds that a thirty percent reduction in hours is appropriate on all entries in which Bollinger used block billing. The Court will not, however, further reduce those entries that include tasks related to Bollinger's indemnity claim, which the Court has already reduced by fifty percent. The Court has carefully reviewed the unreduced invoices dated before October 21,

2014, to determine which invoice entries consist of block billing. The Court finds that Bollinger's counsel submitted block billing for 551.50 hours, totaling $87,170.50 before October 21, 2014.  A thirty percent reduction of these fees totals $26,151.15.

*vi. Summary*

In sum, the Court finds that multiplying a reasonable hourly rate by the reasonable hours expended results in a total of $139,019.55 for attorneys' fees.

### 3. Factors to Determine Reasonableness

The Court has also reviewed the factors[26] considered in adjusting fee awards.  Marine Travelift does not contend that any further adjustment is necessary.  The Court questions whether the high level of staffing on this matter by Reich, Album, & Plunkett, LLC is a proper exercise of billing judgment.  *See Covington*, 118 So. 3d at 357.  Nonetheless, in light of the other substantial reductions to counsel's fees, the Court will not further reduce Bollinger's fee award.  Accordingly, the Court awards Bollinger $139,019.55 in attorneys' fees.

### 4. Costs

Finally, the Court considers Bollinger's claim for costs.  In total, Bollinger seeks to recover costs totaling $36,401.86.  For the reasons already stated, Bollinger is not entitled to costs incurred in relation to its claim for indemnity against Marine

---

[26]    *See* Part II.A., *infra*.

Travelift or Moran Towing.  The Court has identified the following costs as non-recoverable:

- 6/13/2014: Clerk of Court, 17th JDC, Parish of Lafourche- -filing fee for new Petition (Bollinger Marine Fabricators, L.L.C. and Bollinger Shipyards Lockport, L.L.C. v. Marine Travelift, Inc.), $200[27]

- All costs incurred after October 21, 2014, totaling $1,134.52[28]

Accordingly, Bollinger is entitled to $35,067.34 in costs.

## III. CONCLUSION

For the reasons stated above, the Court awards Bollinger attorneys' fees in the amount of $139,019.55 and costs in the amount of $35,067.34.

New Orleans, Louisiana, this 18th day of August, 2015.

_Sarah Vance_

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

---

[27]   R. Doc. 45, Ex. A at BMF0050.

[28]   R. Doc. 45 at 4.